UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Easte.. District of Kentucky
F I L E D

JAN 1 1 2006

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-83-GWU

VERNON FORE,                                                      PLAINTIFF,

VS.                           **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                  DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of his applications for Supplemental Security Income (SSI) and Disability

Insurance Benefits (DIB). It is currently before the Court on cross-motions for

summary judgment; a portion of the plaintiff's argument can be interpreted as

appropriate for a motion to remand under sentence six of 42 U.S.C. Section 405(g).

## LAW APPLICABLE TO SUMMARY JUDGMENT MOTIONS

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.  Is the claimant currently engaged in substantial gainful activity?
    If yes, the claimant is not disabled. If no, proceed to Step 2.
    See 20 CFR 404.1520(b), 416.920(b).

2.  Does the claimant have any medically determinable physical
    or mental impairment(s)? If yes, proceed to Step 3. If no, the
    claimant is not disabled. See 20 CFR 404.1508, 416.908.

1

Fore

3.  Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities?  If yes, proceed to Step 4.  If no, the claimant is not disabled.  <u>See</u> 20 CFR 404.1520(c), 404,1521, 416.920(c), 461.921.

4.  Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months?  If yes, proceed to Step 5.  If no, the claimant is not disabled. <u>See</u> 20 CFR 404.920(d), 416.920(d).

5.  Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (Listing of Impairments)?  If yes, the claimant is disabled.  If no, proceed to Step 6. <u>See</u> 20 CFR 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.  Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.  If no, proceed to Step 7.  <u>See</u> 20 CFR 404.1520(e), 416.920(e).

7.  Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.   <u>See</u> 20 CFR 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.   Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. <u>Jones v. Secretary of Health and</u>

2

Fore

Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 CFR Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

3

Fore

>First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

Fore

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 CFR 416.965(a) and 20 CFR 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 CFR Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent

5

Fore

lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 CFR 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 CFR 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 CFR Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.  In such cases, the agency may be required to consult a vocational specialist.  Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony

6

Fore

only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## STANDARDS APPLICABLE TO MOTIONS TO REMAND

In assessing that portion of the plaintiff's brief which could be interpreted as a separate motion to remand, it must be noted the pertinent federal statute provides that:

> The Court may . . . at any time order additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . .

42 U.S.C. Section 405(g) (emphasis added).

While "good cause" for failure to incorporate such evidence might be established when the additional records were not compiled until after the administrative hearing, Oliver v. Secretary of Health and Human Services, 804 F.2d 964, 966 (6th Cir. 1986), the fact that the plaintiff did not seek to have the record remain open to be able to submit evidence mitigates against such a finding, Willis v. Secretary of Health and Human Services, 727 F.2d 551, 554 (6th Cir. 1984).

To be "material", the documents must be "both relevant and probative", "bearing directly and substantially on the matter in dispute", or "likely to have produced a different administrative result". Huffler v. Heckler, 59 F. Supp. 626, 627

7

Fore

(S.D. Ohio 1984). In order to satisfy this materiality criterion, the claimant must demonstrate that there is a reasonable probability that the Administrative Law Judge (ALJ) would have reached a different conclusion if presented with the new evidence. Sizemore v. Secretary of Health and Human Services, 865 F.2d 709, 711 (6th Cir. 1988). In determining whether to remand a case, the Sixth Circuit Court of Appeals has distinguished between new evidence of the claimant's condition at the time of the administrative hearing and evidence of a subsequent deterioration or change in his condition. The former is deemed material; the later is not. See Sizemore, 865 F.2d at 712.

## DISCUSSION

The administrative law judge (ALJ) found that the plaintiff had "severe" discogenic and degenerative disorders of the back. (Tr. 21). According to the ALJ, the associated limitations caused him to be restricted to a limited range of light level work (Tr. 22-23) which necessarily precluded him from performing his past relevant work (Tr. 23). However, the vocational expert (VE) at the administrative hearing was able to identify significant numbers of alternative jobs which would fit Fore's vocational profile. (Tr. 24, 25). Thus, the claims for benefits were denied. (Tr. 25-26).

The major question for review is whether the physical factors for which the VE identified jobs fairly depicted Fore's functional capacity despite his musculoskeletal

8

Fore

complaints.[1]  These complaints were related to the fact that the plaintiff had injured

his back in July, 2002 and, in October, after unsuccessful conservative therapy and

the confirmation of a herniated disc at L2-L3 by MRI and myelogram, underwent a

L2-L3 right lumbar discectomy performed by Dr. William H. Brooks. (Tr. 185).

A review of the record before the ALJ makes it obvious that four medical

sources expressed an opinion about the plaintiff's capacity to work.

There were two medical reviewers, with whom the ALJ stated that he

"concurred," who expressed an opinion about the plaintiff's condition which differed

from the opinions of several treating sources.  While their opinions did not contain

any real detail about why they disagreed with the opinions of the treating physicians

(Tr. 214, 233, 238, 240), and did not comply with Barker v. Shalala, 40 F.3d 789, 794

(6th Cir. 1994), this was harmless error under the narrow circumstances of this case.

One of the treating sources, Ruhul A. Choudhury, who reportedly saw the

plaintiff as a family doctor (Tr. 256) from 1999 to at least 2003, had ordered the

lumbar spine x-rays and MRI soon after the plaintiff's original back injury (Tr. 200,

---

[1]There was evidence that the plaintiff possibly suffered from a cardiac condition. A perfusion scan of the heart the year before the disability applications were filed suggested a possible infarct versus artifact of the anterior wall and apex of the left ventricle. (Tr. 206).  A 2002 report on an echocardiogram, done some two months before the alleged onset date, had revealed concentric left ventricular hypertrophy and mild mitral regurgitation among its findings (Tr. 157) and a cardiologist had detected a 2/6 systolic ejection murmur (Tr. 154).  However, no physician assessment was made of his cardiac system vis-a-vis functional impairments.  Moreover, his cardiac status was apparently evidence sufficient to allow the discectomy surgery in October, 2002.  (Tr. 189).

9

Fore

202).  In January, 2003, he completed a form briefly, indicating that the plaintiff still

had back pain and lumbar radiculopathy and could do sedentary work with no

stooping, climbing, squatting or crawling.  (Tr. 199).  Significantly, Choudhury

provided absolutely no clinical detail in the form about the plaintiff's condition after his

discectomy.[2]  Under these narrow circumstances, this is an instance where the

treating physician's opinion is clearly not supported by the evidence and, in view of

the fact that there was a somewhat different opinion from a treating specialist, it is

unnecessary to consider Dr. Choudhury's opinion further.

The second treating source, Neurosurgeon Brooks, provided details about his

opinions which differed from that of the medical reviewers; however, significantly, the

ALJ actively addressed Brooks' factors to the vocational expert.  Brooks had

expressed some doubt soon after the surgery about whether the plaintiff would be

able to return to his past work, which required "excessive lifting" (Tr. 194); this opinion

was in line with the ALJ's ultimate findings and the vocational expert's identification

of jobs.  In December, the doctor indicated that his patient had achieved maximal

_____

[2]In separate progress notes which appear to have come from Dr. Choudhury and
his nurse, references to the pair's own clinical examination findings about the back from
November, 2002 to October, 2003 are confined to references about the back condition
being "stable" or "unchanged" or mere references to tenderness.  (Tr. 287-294).
Choudhury did apparently refer the patient to a pain management specialist, but
Choudhury's own progress notes do not discuss the clinical findings of the specialist, nor
did the specialist (although indicating that the plaintiff continued to suffer from pain,
spasm and tenderness--e.g., Tr. 245) suggest a specific residual functional capacity
finding in the materials submitted to the ALJ.

10

medical improvement and that his restrictions were to avoid "repetitive bending, stooping, climbing, crawling, squatting," to lift no more than 20 pounds, and to "avoid sitting, standing and walking for more than 30 minutes at a time" (Tr. 193); these restrictions were cited directly to the vocational expert. The following January in a very brief letter with no additional clinical data whatsoever, the doctor changed the sit-stand-walk option to 20 minutes at a time (Tr. 192); the specific changed restrictions were also cited to the vocational expert. The only opinion not cited to the vocational expert was one portion of Brooks' last commentary indicating that the plaintiff was "disabled"; given the fact that the neurosurgeon simultaneously gave specific restrictions, the ALJ was correct in determining that the disability opinion was one reserved to the Commissioner, while the specific limitations given at the same time should be addressed to the vocational expert.

Thus, the ALJ properly analyzed the evidence of the plaintiff's physical status which was before him.

The ALJ also added to the hypothetical question mental factors such as: (1) a need to have simple, non-detailed work, (2) work where coworker and public contact was casual and infrequent, (3) work where supervision was direct and non-confrontational, and (4) work where changes in the workplace were infrequent and gradually introduced. (Tr. 342). A review of the relevant evidence before the ALJ does not mandate the use of greater restrictions. In March, 2003, Edward Stodola opined that there was no medically determinable mental impairment. (Tr. 218).

11

Fore

William Weitzel, an examiner, indicated that if the plaintiff were to return to his past work, he would "have no restrictions to recommend in the workplace relevant to his psychiatric impairment" (Tr. 264) and noted only unspecified mild restrictions in social functioning, adaptation to stress or concentration (Tr. 275). Accordingly, the mental factors adequately depicted the evidence of the plaintiff's mental health as documented before the ALJ.

An additional issue concerns evidence introduced before the Appeals Council from the pain specialist. In the form in question, the treating pain specialist indicates that the plaintiff would be capable of performing less than a full range of sedentary work. (Tr. 322). One of the requirements for remand of the case for further consideration of this information is that there must be "good cause" for failing to produce the evidence at an earlier point in time. Aside from the question of why the plaintiff did not request the pain specialist to submit a specific residual functional capacity form earlier, it does not appear that the opinion, when obtained, was submitted to the agency in a timely fashion. By the line at the top of the form, it appears that the assessment form was faxed to the doctor by the plaintiff's attorney's office on February 4, 2002 (Tr. 322), the same date as the administrative hearing (Tr. 328), albeit the plaintiff's attorney had made no reference to the fact that additional evidence was expected at the hearing. The physician completed the form on February 18th, still 7 days before the ALJ issued his decision (Tr. 26). There was also a file-stamp at the top of the form referencing March 6, 2004 (Tr. 322), which may

12

Fore

have been the form's receipt at the attorney's office as it does not appear specifically linked with receipt at the agency at that time. Significantly, the form was grouped with other records designated as "AC-1", which covered the period from June, 2003 *through August, 2004* (Tr. 5) and was not referred to in the March 10, 2004 Request for Review of Hearing Decision/Order (Tr. 13). No cover letters exist with regard to the exhibit to establish any earlier receipt by the agency other than after August, 2004. While the evidence might well document a worsening of the plaintiff's condition at and after the time Dr. M. Mazloomdoost began seeing the patient in June, 2003, it does not itself meet the requirements for a remand for further consideration.

For these reasons, as well as the reasons cited in the defendant's brief at pp. 18-19, the decision will be affirmed.

This the ___/ /___ day of January, 2006.


G. WIX UNTHANK
SENIOR JUDGE